**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_Civil Action No.: 22-cv-00644-RMR-NYW_

HARRIS ELIAS,

     Plaintiff,

v.

CITY OF LOVELAND,
OFFICER WILLIAM GATES, and
SERGEANT ANTOLINA HILL,

     Defendants.

**DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND (ECF 12)**

The City of Loveland (the "City" or "Loveland"), Officer William Gates ("Officer Gates") and Sergeant Antolina Hill ("Sgt. Hill") (collectively "Defendants"), by and through counsel of record, Jonathan M. Abramson, Esq. and Yulia Nikolaevskaya, Esq., of Kissinger & Fellman, P.C., hereby file this Partial Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand (ECF 12) ("Motion") and in support thereof, state as follows:

**CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)**

Undersigned counsel for Defendants certifies that on May 27, 2022 and May 31, 2022, Yulia Nikolaevskaya emailed counsel for Plaintiff, Sarah Schielke, to confer on Plaintiff's position in response to this Motion. As of the time of filing the within motion, Ms. Schielke has not responded to either email. It is presumed Plaintiff is opposed to the relief requested herein.

**I.      INTRODUCTION**

Approximately 12 million Americans drove while high on marijuana in 2018, while 20.5 million people drove drunk, according to new data from the Centers for Disease Control and

Prevention.[1] "Impaired driving is a serious public health concern that needs to be addressed to safeguard the health and safety of all who use the road," CDC researchers said.[2] The fact the City takes impaired driving enforcement seriously or that the City has a task force dedicated to eradicating impaired drivers is not unconstitutional or illegal. In 2020 alone, the year Plaintiff's arrest occurred, 11,654 people died in alcohol-impaired driving deaths – a 14% increase from 2019.[3] No evidence exists that (i) the City had any unconstitutional policies regarding DUI arrests; (2) Sgt. Hill violated Plaintiff's constitutional rights; or (iii) Officer Gates violated C.R.S § 13-21-131.

## II.      STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (*quoting Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). A claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court is not required to accept as true legal conclusions

---

[1] https://www.usnews.com/news/healthiest-communities/articles/2019-12-20/cdc-drugged-driving-a-serious-public-health-issue#:~:text=%22Impaired%20driving%20is%0a%20serious,road%2C%22%20CDC%20researchers%20said.

[2] *See* FN. 1

[3] https://www.nhtsa.gov/risky-driving/drunk-driving#:~:text=In%202020%2C%2011%2C654%20people%20died,a%2014%25%20increase%20from%202019.

and mere conclusory statements. *See id*. at 555. "'[N]aked assertions[s]' devoid of 'further factual enhancement'" are not sufficient to establish a claim. *Gutierrez v. Luna Cty*., 2014 U.S. Dist. LEXIS 200434, at *42 (D.N.M. 2014) (*quoting Twombly*, 550 U.S. at 557). Likewise, allegations so general that they encompass a wide swath of conduct, both permissible and not, may be disregarded. *Hale v. Fed. Bureau of Prisons*, 2015 U.S. Dist. LEXIS 132832, at *16 (D. Colo. Sep. 30, 2015) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192 (D.N.M. 2009) (citation omitted). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### III.   ARGUMENT

**A.  Plaintiff's Unlawful Arrest Claim Against Officer Gates Under C.R.S. § 13-21-131 is Legally Deficient and Must be Dismissed with Prejudice (Claim II).**

Plaintiff attempts to bring an Unlawful Arrest Without Probable Cause ("Unlawful Arrest") claim against Officer Gates under C.R.S. § 13-21-131. However, C.R.S § 13-21-131 was not enacted in Colorado until the summer of 2020 and was not in effect at the time of this incident which occurred on January 4, 2020. Plaintiff's Amended Complaint and Jury Demand (ECF 12) [4] ("Amended Complaint", "Am. Comp." or "ECF 12") Am. Comp., ¶15. C.R.S. § 13-21-131 does

---

[4] The Amended Complaint does not comply with Fed. R. Civ. P. 8, because it is not concise, it contains 62 pages and 235 paragraph. It also violates Fed. R. Civ. P. 12(f) because it includes photographs, instances of repeated allegations, legal conclusions, redundant, immaterial and impertinent facts.

not apply retroactively, and, therefore, does not apply to this cause of action. Plaintiff's claim under C.R.S. § 13-31-131 against Officer Gates is legally deficient and must be dismissed with prejudice.

C.R.S. §13-21-131(1) reads as follows:

> A peace officer, [ ] who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief.[5]

Colo. Rev. Stat. § 13-21-131 (1) (2021).

"Legislation can be applied "prospectively," "retroactively," or "retrospectively."" *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.*, 849 P.2d 6, 11 (Colo. 1993). A statute is presumed to operate prospectively absent clear legislative intent that it applies retroactively. § 2-4-202, C.R.S. (2021); *see also Ficarra*, 849 P.2d at 14. "This means that a statute applies to transactions that take place after the section's effective date unless the legislature clearly intends otherwise." *Smith v. Jeppsen*, 2012 CO 32, ¶10, 277 P.3d 224, 227, *citing In re Estate of DeWitt*, 54 P.3d 849, 854 (Colo. 2002).

"Although retroactive application of a statute is disfavored, such application is not necessarily unconstitutional." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo. App. 2004). "Where a statute effects a change that is procedural or remedial, it may be applied retroactively." *Id*. "However, when a statute's retroactive application is unconstitutional, it is deemed retrospective." *In re Estate of DeWitt*, *supra*; *In re Estate of Moring v. Colo. Dep't of Health Care Policy & Fin.*,

---

[5] C.R.S § 13-21-131 was originally signed into law on June 19, 2020. C.R.S. § 13-21-131 was subsequently amended in 2021 and signed by Governor Polis on July 6, 2021. Section 1 of C.R.S. § 13-21-131, which is subject to this action, has been amended to delete the words "employed by local government". Otherwise, both versions of C.R.S § 13-21-131 are the same.

24 P.3d 642 (Colo. App. 2001).

Courts apply "a two-step analysis in distinguishing between retroactive and retrospective legislation: (1) whether the General Assembly intended the legislation to be *retroactive*, *i.e.*, affecting transactions or rights occurring before the legislation's effective date; and (2) if so, whether the legislation becomes *retrospective*, and therefore unconstitutional as applied." *Becker v. Becker (In re Estate of Becker)*, 32 P.3d 557, 561 (Colo. App. 2000) (citation omitted).

When construing a statute, courts must ascertain and give effect to the intent of the General Assembly, *see Walker v. People*, 932 P.2d 303, 309 (Colo. 1997), and must refrain from rendering judgments that are inconsistent with that intent. *See Farmers Ins. Exch. v. Bill Bloom, Inc.*, 961 P.2d 465, 469 (Colo. 1998). "To determine legislative intent, [the Courts] therefore look first to the plain language of the statute." *See Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo. 1997); *City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 590 (Colo. 1997). If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it said. *See Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333, 1337 (Colo. 1996); *PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo. 1995).

"A law is unconstitutionally retrospective if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."" *In re Marriage of Weekes*, 2020 COA 16, ¶20, 459 P.3d 1216, 1220, citing *Abromeit v. Denver Career Serv. Bd.*, 140 P.3d 44, 51 (Colo. App. 2005). "Subject to some limited exceptions, retroactive application of a substantive law — one that "create[s], eliminate[s,] or modif[ies] vested rights or liabilities," *People v. D.K.B.*, 843

P.2d 1326, 1331 (Colo. 1993) — is ordinarily unconstitutional, *Taylor Morrison of Colo., Inc. v. Bemas Constr., Inc.*, 2014 COA 10, ¶19, 411 P.3d 72." *In re Marriage of Weekes*, 2020 COA at ¶20. "But as a general matter, statutes that are procedural or remedial in nature may be applied retroactively without violating the constitutional prohibition against retrospective legislation." *Id*.

Before C.R.S. § 13-21-131 was enacted, the Colorado Supreme Court, in *Board of County Commissioners v. Sundheim*, 926 P.2d 545, 550 (Colo. 1996), "held that the due process clause of the Colorado Constitution, article II, section 25, does not create an implied cause of action in damages." *See Giuliani v. Jefferson Cty. Bd. of Cty. Comm'rs*, 2012 COA 190, ¶32, 303 P.3d 131, 138. Therefore, by enacting C.R.S. § 13-21-131, the Colorado legislators created a new and explicit cause of action against peace officers for violation of a person's constitutional rights established by the Colorado Constitution. Legislators enacted a new statute and did not amend any previously existing statutes. Moreover, the language of C.R.S. § 13-21-131 does not contain any language expressly authorizing retroactive application of this newly created statute. Expressly, Senate Bill 20-217 (2020), which enacted C.R.S. § 13-21-131, clearly stated that the statute would be effective as of the date of passage, June 19, 2020. *See* https://leg.colorado.gov/bills/sb20-217. Moreover, when C.R.S. § 13-21-131 was amended by Senate Bill 21-1250 (2021), legislators again did not include any language that would authorize retroactivity of this statute before the date of the original passage of Senate Bill 20-217 (2020) on June 19, 2020. Therefore, the plain language of C.R.S § 13-21-131 does not authorize retroactivity. This Court should "give effect to the ordinary meaning of words used by the legislature", construe C.R.S. 13-21-131 as written and presume that legislators did not authorize retroactivity as to C.R.S § 13-21-131. *See Askew,* 927 P.2d at 1337.

But even assuming *arguendo*, that legislators assumed retroactive application for C.R.S § 13-21-131, because C.R.S. § 13-21-131 creates a new cause of action against peace officers under the Colorado Constitution that previously did not exist, applying C.R.S. § 13-21-131 retrospectively would be unconstitutional. Such unconstitutional retroactive application of the statute is prohibited and, therefore, C.R.S. § 13-21-131 can only operate prospectively. *See Landgraf v. USI Film Products*, 511 U.S. 244, 270, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) ( a statute cannot be applied retroactively if it imposes "new legal consequences [on] events completed before its enactment"); *City of Golden v. Parker*, 138 P.3d 285, 290 (Colo. 2006) (retroactive application of a statute is prohibited where "the reasonable expectations and substantial reliance of a party vested prior to the enactment of the statute").

This Court should find that because legislators did not intend for C.R.S. § 13-21-131 to apply retroactively and because C.R.S. § 13-21-131 would be unconstitutional if applied retroactively, C.R.S. § 13-21-131 applies prospectively from the date of enactment of June 19, 2020. *See Barnum v. Klassen*, Weld County District Court, State of Colorado, Case No. 2020CV30762 (Weld County District Court found that the General Assembly did not intend for C.R.S. § 13-21-131 to apply retroactively and that the retroactive operation of C.R.S. § 13-21-131 would be unconstitutionally retrospective). A copy of the *Barnum v. Klassen* Order regarding this holding is attached as Exhibit A. This Court should find that C.R.S. § 13-21-131 applies prospectively and should grant Officer Gates' Motion to Dismiss Claim II of the Amended Complaint, Unlawful Arrest, with prejudice.

**B. Plaintiff Failed to Allege Supervisory Liability of Sergeant Hill as to Unlawful Seizure Claim (Claim I)**

Plaintiff failed to sufficiently plead that Sgt. Hill violated Plaintiff's constitutional rights under the Fourth Amendment. *See* ECF 12, p. 54 (Claim I). Even though it is not explicit in the body of

the First Claim for Relief of the Amended Complaint (p. 54), it appears that Plaintiff is alleging an individual capacity supervisory liability claim against Sgt. Hill. "[A] plaintiff must satisfy three elements to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Rustgi v. Reams*, 2021 U.S. Dist. LEXIS 81831, at *20 (D. Colo. 2021), citing *Estate of Strong v. City of Northglenn, Colo.*, 2018 U.S. Dist. LEXIS 58219, 2018 WL 1640251, at *5 (D. Colo. Apr. 5, 2018) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). A claim for supervisory liability requires "an affirmative link between the supervisor and the constitutional violation, meaning more than a supervisor's mere knowledge of his subordinate's conduct." *Id.* (internal quotation marks omitted).

In this case, Plaintiff failed to plead Sgt. Hill's personal involvement, causal connection and culpable state of mind required to sufficiently allege supervisory liability.

i.   *Personal Involvement.*

For supervisory liability, "[p]ersonal participation is an essential allegation in a 1983 claim." *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019). A supervisor cannot be held vicariously liable for the constitutional violations of subordinates. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2003) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.")

Sgt. Hill 1) did not participate in the traffic stop of Plaintiff; 2) was not involved in Plaintiff's arrest at the location of the traffic stop on January 4, 2020; 3) did not request that Plaintiff submit to a breathalyzer or blood test; 4) did not order Officer Gates to order Plaintiff to submit to a breathalyzer or blood test; and 5) did not direct any actions of Officer Gates. Am. Comp., pp. 1-

8

62. As alleged in the Amended Complaint, at some point during Plaintiff's arrest, Sgt. Hill was at the police station, and she had a conversation with Officer Gates.[6] Am. Comp., ¶87. Plaintiff claims that during this conversation, Sgt. Hill was told that by Officer Gates that Plaintiff had blown all zeros so he made him do a blood test to see if he could get him for any medications or something else that way. *Id.* Allegedly, Sgt. Hill nodded in agreement. *Id.* Plaintiff claims that Sgt. Hill then assisted Officer Gates in writing his report of the arrest and approved it as his supervisor. Am. Comp., ¶90. Plaintiff claims that Sgt. Hill could have told Officer Gates to release Plaintiff and not charge Plaintiff with DUI because Plaintiff had blown zeros, and there was no evidence of any other drug. Am. Comp., ¶89.

At most, Plaintiff's Amended Complaint alleges that Sgt. Hill spoke with Officer Gates after Plaintiff was already arrested and tested via a breath test and blood test. No facts in the Amended Complaint, besides Plaintiff's conclusory and inflammatory allegations, show that on the day of this incident 1) Officer Gates informed Sgt. Hill that Officer Gates had no probable cause to arrest Plaintiff; or 2) Sgt. Hill was aware of any actual evidence that no probable cause existed for the arrest of Plaintiff. Am Comp., pp. 1-62. The allegations in Plaintiff's Amended Complaint failed to establish a viable claim against Sgt. Hill under the Fourth Amendment for failure to supervise. Every factual non-conclusory allegation contained in the Amended Complaint pertains to Sgt. Hill's conduct on January 4, 2020 after Plaintiff was already arrested and had submitted to the tests

---

[6] The allegations in ¶87 of the Amended Complaint regarding the substance of the conversation that occurred between Officer Gates and Sgt. Hill, are unsupported by any evidence and are nothing more than an uncorroborated speculation by Plaintiff. Plaintiff specifically alleges that the body camera microphones of both, Sgt. Hill and Officer Gates, were muted for the conversation. Am. Comp., ¶87. Yet, with muted microphones Plaintiff claims to know what verbal exchange took place. *Id.* This Court should disregard any speculations by Plaintiff as to the substance of a muted conversation.

requested by Officer Gates. Plaintiff's Amended Complaint failed to plead the requisite personal participation of Sgt. Hill.

   *ii.   Causal Connection.*

   "The second element requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013). "A plaintiff [must] establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) (quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009)); *see also Starr v. Baca*, 652 F.3d 1202, 1218 (9th Cir. 2011) ("The requisite causal connection can be established [] by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." (internal quotation marks omitted)).

   In this case, Plaintiff failed to allege a causal connection between Sgt. Hill's post-incident and post-arrest actions and the alleged violation of an Unlawful Seizure on January 4, 2020 by Officer Gates. Plaintiff does not allege that on the day of this incident Sgt. Hill directed or ordered any of Officer Gates' actions as to Plaintiff. Am. Comp., pp. 1-62. Nothing in Plaintiff's conclusory allegations provides a causal connection between Officer Gates and Sgt. Hill that culminated in the alleged Unlawful Seizure violation alleged by Plaintiff. Conclusory allegations are insufficient to establish the causal connection necessary to plead a supervisory liability claim. *See Handy v. Cummings*, 2013 U.S. Dist. LEXIS 41282, at *14 (D. Colo. 2013). Accordingly, Plaintiff's supervisory claim against Sgt. Hill should be dismissed with prejudice.

*iii. Culpable State of Mind.*

The third element requires Plaintiff to show that Sgt. Hill took the alleged actions with the requisite state of mind. *See Schneider*, 717 F.3d at 769. Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings. *See Iqbal*, 556 U.S. at 676; *Dodds*, 614 F.3d at 1204-05. The applicable state of mind for a substantive due process claim is deliberate indifference. *See Schneider*, 717 F.3d at 769.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Deliberate indifference can be satisfied by evidence showing that the defendant "knowingly created a substantial risk of constitutional injury." *Dodds*, 614 F.3d at 1206. "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (internal quotation marks omitted).

In this case, Plaintiff's allegations against Sgt. Hill as to her actions on the day of the incident are not only conclusory, but also fail to show that she knew Officer Gates had no probable cause for Plaintiff's arrest. Sgt. Hill was not at the location of the traffic stop and Sgt. Hill never interacted with Plaintiff. Sgt. Hill was not there for Plaintiff's blood or breath test and Sgt. Hill did not observe Plaintiff's driving. Sgt. Hill was not told by Plaintiff that he was wrongfully arrested, and Officer Gates did not tell Sgt. Hill that no probable cause existed for Plaintiff's arrest. Having a conversation with an officer under your supervision, post-arrest, as to that officer's arrest does

not satisfy the stringent requirement of deliberate indifference necessary to support a supervisory liability claim. Therefore, Plaintiff's Amended Complaint failed to allege the requisite elements for supervisory liability of Sgt. Hill and this Court should dismiss the Fourth Amendment claim (Claim I) with prejudice.

## C. Plaintiff's Amended Complaint Fails to Allege a Viable Malicious Prosecution Claim Against Sgt. Hill (Claim III)

Plaintiff's malicious prosecution claim against Sgt. Hill is legally deficient. Plaintiff's Amended Complaint fails to sufficiently allege that it was Sgt. Hill that specifically caused Plaintiff's continued confinement or prosecution, that Sgt. Hill knew no probable cause existed as to Plaintiff's arrest and that Sgt. Hill acted with malice against Plaintiff.

"[A] § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799, 2008 U.S. App. LEXIS 12676, *21.

The Amended Complaint alleges that Sgt. Hill signed off on an arrest warrant after Plaintiff was already taken into custody by Officer Gates. Am. Comp., ¶200. However, nothing in the Amended Complaint alleges that Sgt. Hill knew that no probable cause existed as to Plaintiff's arrest. Am. Comp., pp. 1-62. The allegation that Sgt. Hill knew that Plaintiff took a breathalyzer test, and that alcohol was not detected but that does not prove that Sgt. Hill knew no probable cause existed as to Plaintiff's arrest for driving under the influence. It is common knowledge that certain ingested drugs cannot be detected by a breathalyzer test. Likewise, the Amended Complaint does not allege that Sgt. Hill 1) was at the location of the traffic stop; 2) observed Plaintiff's

driving, 3) had a conversation with Plaintiff; or 4) was informed by anyone that facts included in the arrest warrant drafted by Officer Gates were allegedly false. Am. Comp., pp. 1-62. Thus, when Sgt. Hill signed off on the warrant by Officer Gates, she accepted the facts presented by Officer Gates as true. Sgt. Hill is allowed to rely on Officer Gates' findings and investigation. *See Eckert v. Dougherty*, 658 Fed. Appx. 401, 407, 2016 U.S. App. LEXIS 16803, *14 ("[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable.") Nothing in the Amended Complaint alleges that it was Sgt. Hill who arrested Plaintiff or drafted the affidavit for his arrest. Absent any facts supporting the proposition that Sgt. Hill was aware Officer Gates had no probable cause for Plaintiff's arrest, Plaintiff cannot satisfy the first, third and fourth elements of a malicious prosecution claim -- personal participation, no probable cause and malice. Therefore, the Court should dismiss the Malicious Prosecution claim (Claim III) against Sgt. Hill.

**D.   Plaintiffs Failed to Plead a Viable *Monell* Claim Against the City (Claim I)**

Plaintiff failed to plead a viable *Monell* claim against the City. Besides inflammatory and conclusory allegations against the City in Plaintiff's voluminous Amended Complaint, nothing in the Amended Complaint nudges *Monell* allegations against the City from conceivable to plausible. Plaintiff failed to plead the facts required to support *Monell* liability against a municipality and sufficiently allege "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *See Monell v. Dept of Soc. Servs. of City of N. Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Therefore, Plaintiffs' *Monell* claim against the City

should be dismissed.

Plaintiff claims that 1) the City had a duty to train and supervise Officer Gates (Am. Comp., ¶208); 2) the City had an alleged custom/practice where its officers would punish anyone who refused to be questioned by arresting them (Am. Comp., ¶211); 3) the City had a custom/practice of rewarding and valuing DUI arrest numbers over actual lawful DUI arrests (Am. Comp., ¶212); and 4) the City's failure to supervise and train Gates, as well as the alleged unconstitutional customs/practices, were the moving force behind Plaintiff's arrest. (Am. Comp., ¶213). In a conclusory manner, Plaintiff also alleges that the City was aware of Officer Gates' alleged propensity for wrongful arrest of citizens to increase his DUI numbers and falsifying of reports and that the City had evidence but failed to remedy it. Am. Comp., ¶210. Plaintiff failed to outline how the City had evidence of Officer Gates' alleged propensity, who at the City was aware of such evidence, and how the City failed to remedy the issue. Am. Comp., pp. 1-62.

i. *Plaintiff Failed to Allege a Plausible Monell Claim Pursuant to Unconstitutional Custom/Practice.*

Plaintiff failed to allege a plausible claim against the City under the theory that the City valued and rewarded DUI arrest numbers over actual lawful DUI arrests. Am. Comp., ¶212. Without any legal or factual support, in conclusory fashion, Plaintiff alleges that the City somehow knew that it had "DUI arrest numbers" and then also "lawful DUI arrests". *See* Am. Comp., ¶ 212. However, Plaintiff never defined what he means by "DUI arrest numbers" and "*lawful* DUI arrests". Likewise, Plaintiff never specifically alleged who at the City possessed this specific information and how the City was specifically aware of it. Thus, this specific allegation, as it pertains to City's policy (Am. Comp., ¶212), has no facial plausibility "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. "A

pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id*. (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "A complaint must do more than make conclusory assertions that the city has engaged in such a practice; it must articulate specific facts that, if true, support the existence of a practice." *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) ("In order to state a facially plausible equal-protection claim under *Monell*, the factual allegations in [plaintiff's] complaint must allow us to draw the reasonable inference that the City established a policy or practice."); *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1214 (D.N.M. 2015) ("The plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists."); *see also Svastics v. City of Beverly Hills*, 178 F.3d 1300 (9th Cir. 1999) (unpublished); *Granato v. City and Cty. of Denver*, 2011 U.S. Dist. LEXIS 97007, 2011 WL 3820730 (D. Colo. 2011).

Plaintiff's Amended Complaint is 62 pages long, but it fails to contain any factually specific

allegations as to how the City was allegedly aware of the DUI arrest numbers, lawful DUI arrests, and by whom, when or how a custom/practice as to rewarding and valuing those DUI arrest numbers was devised and promulgated. Am. Comp., ¶212. The Court should dismiss this allegation as implausible.

   ii.   *Plaintiff Failed to Allege That the City had Any Unconstitutional Custom/Practice.*

It is only when the "execution of a government's policy or custom . . . inflicts the injury" that the governmental entity or its policy makers may be held liable under § 1983. *Monell*, 436 U.S. at 694. A municipality may be held liable under 42 U. S. C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Id.*

A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989) (internal quotation marks omitted)).

It appears that Plaintiff is alleging the City failed to train and supervise Officer Gates. Am. Comp., ¶¶208, 213. In addition, although Plaintiff's Amended Complaint is not clear whether he

is alleging a formal or informal unconstitutional policy by the City (Am. Comp., pp. 54-58), it would be the City's assumption that because Plaintiff specifically referred to the City's "custom/practice" (Am. Comp., ¶¶211, 212, 213), Plaintiff is alleging an informal[7] policy/practice of the City.

    a.   <u>Unofficial Custom/Practice.</u>

"A plaintiff may state a *Monell* claim based upon "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is *so permanent and well settled* as to constitute a custom or usage with the force of law.""" *Estate of Kowalski v. Shrader*, 2022 U.S. Dist. LEXIS 408, *62, 2022 WL 19422 (citation omitted) (emphasis in original). "With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible—or use other evidence, such as a [prison official's] statements attesting to the policy's existence." *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (citation omitted). In this case, Plaintiff failed to plead a statement by any City official that the City has a custom/practice of officers punishing anyone who refused to be questioned by arresting them, or a policy of rewarding and valuing DUI

---

[7] If Plaintiff is alleging a formal unconstitutional custom/policy, Plaintiff's allegation is deficient. "A municipality is liable only when the official policy [or custom] is the moving force behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "A plaintiff must therefore 'identify a government's policy or custom that caused the injury.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "[F]or an unconstitutional policy, a plaintiff should set out the text of that policy." *Leonhard v. Correct Care Sols.*, LLC, 2020 U.S. Dist. LEXIS 60886, *24, 2020 WL 1694377, citing *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018) (granting a motion to dismiss a claim for an unconstitutional policy because the complaint did not "set[] out the text of any [] policy"). In this case, Plaintiff failed to set out the text of any alleged unconstitutional policy by the City. Am. Comp., pp. 1-62. Thus, Plaintiff failed to sufficiently allege an official unconstitutional policy and his *Monell* claim based on official policy should be dismissed. *See Estate of Kowalski v. Shrader*, 2022 U.S. Dist. LEXIS 408, *49, 2022 WL 19422.

arrest numbers over actual lawful DUI arrests. Am. Comp., ¶¶211, 212, pp. 1-62.

"Because the Complaint relies on the existence of an alleged pattern of similar incidents, [......], the court must determine whether the Complaint sufficiently alleges the existence of a "widespread practice" that is "so permanent and well settled" so as to constitute a custom with the force of law." *Estate of Kowalski,* 2022 U.S. Dist. LEXIS 408 (citation omitted).

In this case, Plaintiff failed to plead any prior instances of alleged arrests of "anyone who refused to be questioned (in violation of their constitutional rights) by arresting them." Am. Comp, ¶211. Plaintiff attempts to argue that 2019 and 2020 use of force incidents would qualify as such pattern. Am. Comp., ¶49. Plaintiff also claims that the 2020 arrest for a DUI at a parking lot would also qualify. However, not only did Plaintiff fail to cite to more than one prior incident (Am. Comp., ¶49(a)), every incident cited by Plaintiff is factually distinguishable from the case at hand because most of the incidents cited are incidents of alleged use of force. Am. Comp., ¶49 (b, c, d). Therefore, Plaintiff failed to show a pattern of any prior alleged incidents where anyone was arrested because they "refused to be questioned." Am. Comp., ¶211.

Likewise, Plaintiff failed to plead a pattern of prior incidents that would show that the City had a custom/practice of rewarding and valuing DUI arrest numbers over actual lawful DUI arrests. Am. Comp., ¶212. Plaintiff alleges that in 2018, Officer Gates had over 50 DUI arrests. Am. Comp., ¶117. In 2019, Officer Gates allegedly had 130 DUI arrests. *Id.* Plaintiff claims that in 2019 and 2020, out of approximately 180 DUI arrests five (5) were allegedly wrongful DUI arrests.[8] Am. Comp., ¶153, 155, 157, 158, 162. All five took place before Plaintiff's arrest on

---

[8] The City only analyzed Officer Gates' 2018-2019 alleged DUI arrest cases as Plaintiff did not provide the total number of DUI arrests for Sgt. Hill for 2018-2019. Nonetheless, Plaintiff alleges that in 2018 and 2019, Sgt. Hill had only five (5) allegedly wrongful DUI arrests. Am. Comp., ¶¶154, 156, 159, 160, 161.

January 4, 2020. Am. Comp., ¶15. All five have various probable causes as to the arrest. Out of the five allegedly wrongful arrests, the 1st arrest, on August 27, 2018, involved a driver whose age Plaintiff's Amended Complaint did not list, registering a 0.02 BAC result on a breathalyzer test. Am. Comp., ¶153. The 2nd arrest involved a driver alleged to have failed the Standardized Field Sobriety Maneuvers. Am. Comp., ¶155. In the 3rd arrest, after taking a blood test, the driver's result came back positive for THC.[9] Am. Comp., ¶157. In the 4th arrest, the driver admitted to having a couple drinks many hours prior to the stop, allegedly failed Standardized Field Sobriety Tests, and blew 0.042 into a Portable Breath Device. Am. Comp., ¶158. And, in the 5th arrest, driver was observed swerving one time on the road, allegedly failed Standardize Field Sobriety Tests, and produced a blood test result of 0.028 BAC. Am. Comp., ¶162. None of the above incidents cited by Plaintiff indicate that the charges against the driver were dropped because the Court determined no probable cause existed to arrest the driver or that anyone at all determined no probable cause for arrest existed at the time of the arrest. Am. Comp., pp. 1-62. The fact that ultimate test results were below legal limit does not mean arrests were unlawful.

Even if we assume that five of Officer Gates' cases cited by Plaintiff are the alleged "wrongful arrests", as the City denies, only five prior alleged wrongful DUI arrests by Officer Gates, over a span of two years prior to Plaintiff's arrest, and out of approximately 180 DUI arrests performed by Officer Gates, is insufficient to show any informal custom of the entire City. Those incidents are only similar to this case in subject matter: they pertain to a DUI arrest. However, in each allegedly wrongful prior DUI arrest by Officer Gates, unlike here, the driver either failed

---

[9] If at such time the driver's blood contained five nanograms or more of delta 9-tetrahydrocannabinol per milliliter in whole blood, as shown by analysis of the defendant's blood, such fact gives rise to a permissible inference that the defendant was under the influence of one or more drugs. C.R.S. §42-4-1301.

Standardized Field Sobriety Tests, admitted to drinking, took a Portable Breath Test which indicated alcohol was present in the system or had some amount of alcohol or cannabis in the system post testing. As Plaintiff alleged in this case, he did not admit to drinking, did not submit to Standardized Field Sobriety Tests or a Portable Breath Test, and later tested negative for everything. Am. Comp., pp. 1-62. None of the prior cases cited by Plaintiff stand to support a pattern that the City "had a custom/practice of rewarding and valuing DUI arrest numbers over actual lawful DUI." Am. Comp., ¶212. At most, Plaintiff cited to five allegedly wrongful cases out of approximately 180, which are not factually similar, all belonging to the same officer, and in which the charges against the driver were eventually dropped. *See Estate of Kowalski*, 2022 U.S. Dist. LEXIS 408, *66 (the Court ruled that three events in the span of fourteen (14) months period is not enough to establish a widespread practice); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("[T]hree incidents" in a four-year period "were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware"); *Abila v. Funk*, No. CV 14-1002 JB/SMV, 2016 U.S. Dist. LEXIS 172737, 2016 WL 9021834, at *19 (D.N.M. Dec. 14, 2016) (citing cases in support of the statement that "two or three instances will not suffice" to establish practice or custom). Plaintiff failed to sufficiently plead an informal widespread policy/custom.[10]

      b. <u>Even If Plaintiff Could Allege an Unofficial Custom or Policy, Plaintiff's Amended Complaint Failed to a Plead Direct Causal Connection.</u>

---

[10] Likewise, if Plaintiff is indirectly alleging that the City ratified Officer Gates' actions as to this arrest, Plaintiff failed to sufficiently plead that allegation. "[R]atification is more than acquiescence." *Estate of Kowalski*, 2022 U.S. Dist. LEXIS 408, *67, citing *Jack v. Cty. of Stanislaus*, 2017 U.S. Dist. LEXIS 150367, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15, 2017). "[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's *specific unconstitutional actions*, as well as the basis for these actions." *Id.*, citation omitted. In this case, the Amended Complaint fails to allege that any City official ratified Officer Gates' actions as to Plaintiff's specific arrest. Am. Comp., pp. 1-62.

After establishing a policy or custom, a plaintiff must demonstrate "a direct causal link between the policy or custom and the injury alleged." *Waller v. City and Cty. of Denver*, 932 F.3d 1277 (10th Cir. 2019). A plaintiff must allege sufficient facts to show that a municipality's own unconstitutional or illegal policy or custom caused his injury. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). For causation, "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (citing *Schneider*, 717 F.3d at 770). When a policy is facially constitutional, the burden of establishing causation (and culpability) is heavy. *Id.* (citing *Brown* 520 U.S. at 405). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citations omitted).

Plaintiff failed to satisfy the rigorous requirement of causation and sufficiently plead a direct causal connection between the City's alleged custom/practice of arresting people because they refused to be questioned and based on the City's alleged custom/practice of "rewarding and valuing DUI arrest numbers over actual lawful DUI arrests." Am. Comp., ¶¶211, 212. Plaintiff not only failed to sufficiently plead that the City had such unofficial customs/practices, but also how the alleged custom/practice led to his arrest. Plaintiff concedes in his Amended Complaint that his driving at the time of this incident was affected by his daydreaming. Am. Comp., ¶21 (Plaintiff admits to taking foot off the gas pedal while in traffic to orient himself). Conclusory allegations are not enough to sustain a *Monell* claim. *Griego,* 100 F. Supp. 3d at 1214 (citation omitted) ("[t]he district court also properly dismissed the claims against the City because any allegations of an

21

unconstitutional custom or policy, even after amendment of the complaint, remained too conclusory to support a claim pursuant to *Monell*.") Thus, Plaintiff failed to sufficiently plead the required element of causation.

   c.  Plaintiff Failed to Sufficiently Allege That the City Failed to Train and Supervise Officer Gates.

Plaintiff's Amended Complaint lacks facts to support the allegation of failure to train against the City. "A municipality may be liable for failing to train or supervise its employees in "limited circumstances."" *Rehberg*, 2012 U.S. Dist. LEXIS 53506, *10-11, 2012 WL 1326575, *citing City of Canton*, 489 U.S. at 387. "The failures to "train" or "supervise" are so similar that they are discussed together and require the same elements."" *Id*., *11, *see, e.g., Bryson*, 627 F.3d at 788; *Brammer-Hoelter*, 602 F.3d at 1189-90. In fact, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359; *see also Okla. City v. Tuttle*, 471 U.S. 808, 822-23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) (a "policy" of "inadequate training" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). Thus, the fact:

> [t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Valdez v. Motyka*, 2020 U.S. Dist. LEXIS 122359, *11-12, citing *City of Canton*, 489 U.S. at 390-91.

"Given all this, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate [the municipality's] deliberate indifference for purposes of [a] failure to train [claim]."" *Valdez*, *12, citing *Connick*, 563 U.S. at 62 (internal quotation marks omitted). "In *Connick* itself, for example, a pattern of previous violations of the duty to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), was not enough to put the local district attorney on notice of the need to train specifically regarding the need to disclose "blood evidence, a crime lab report, or physical or scientific evidence," which was the sort of evidence at issue there."" *Id*., citing *Connick*, 563 U.S. at 62-63.

First, "Plaintiff "do[es] not allege specific facts about who, what, where, and when that establish a plausible claim" that the City failed to train or supervise its officers." *Tivis v. City of Colo. Springs*, 2020 U.S. Dist. LEXIS 42054, *13, 2020 WL 1166842; *see Myers v. Koopman*, , 2010 U.S. Dist. LEXIS 108612, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010), *order clarified*, 2011 U.S. Dist. LEXIS 9044, 2011 WL 320564 (D. Colo. Jan. 28, 2011) (dismissing failure to train and supervise claims where the plaintiffs lumped the defendants together as a generalized group and alleged that the group maintained unconstitutional policies and customs and failed to train and supervise those under their supervision but did not allege specific facts about who, what, where, and when that would establish a plausible claim). "Plaintiff does not proffer any facts regarding the officers' training or supervision—when it occurred, who conducted it, or how it was deficient." *Tivis*, 2020 U.S. Dist. LEXIS 42054, *13. *See, e.g., Bark*, 2011 U.S. Dist. LEXIS 53245, 2011 WL 1884691, at *3 (dismissing a plaintiff's § 1983, failure to train case against a municipality in part because the plaintiff failed to allege specific deficiencies in training and supervision). "Nor does Plaintiff explain how the incident described in the second amended

complaint could have been avoided with different or better training and supervision." *Tivis*, 2020 U.S. Dist. LEXIS 42054, *14. "Plaintiff also does not identify the individuals he claims inadequately supervised the individual defendants, nor does he allege that the defendants' supervisors were policymakers." *Id. See, e.g., Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009) (a municipality may not be liable under § 1983 for the acts of its employees unless they are policymakers or unless the municipality itself has adopted an unconstitutional law, custom, or policy). "Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim against a municipality." *Tivis*, 2020 U.S. Dist. LEXIS 42054, *14, citing *City of Canton*, 489 U.S. at 390-91.

Plaintiff's Amended Complaint does not identify, describe or plead what specific program of the City was deficient, how that training program was deficient or how the training provided by the City was deficient. Am. Comp., pp. 1-62. The Amended Complaint does not allege that Officer Gates was not trained in DUI enforcement. *Id.* The Amended Complaint does not allege what was deficient with the training Officer Gates received. *Id.* Because, in this case, Plaintiff failed to plead who, what, where, and when as it pertains to the City's failure to train and supervise Officer Gates, this Court should dismiss Plaintiff as unplausible and legally deficient. *See Tivis*, 2020 U.S. Dist. LEXIS 42054, *14.

d. Even if Plaintiff Can Plausibly Allege a Claim of Failure to Train and Supervise, Plaintiff Failed to Sufficiently Plead Causation as to the Failure to Train Theory of Liability.

Plaintiff's Amended Complaint does not contain facts to sufficiently allege the necessary *Monell* element of causation as to the allegation of failure to train and supervise. *See Monell,* 436

U.S. at 694. At most, the Amended Complaint contains a variety of conclusory statements insufficient to support liability.

"The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider*, 717 F.3d at 770 (internal quotation marks omitted). It is not sufficient for a plaintiff to allege that he was harmed and that the harm could have been prevented if the governmental entity did something different in the way of training or supervision. *Thompson*, 563 U.S. at 67-68. A causal connection would be shown if the City "set in motion a series of events" that the City knew or reasonably should have known would cause officers to commit a constitutional violation. *Schneider*, 717 F.3d at 779. "Mere speculation that something would have been done to prevent [the plaintiff's] injury is not sufficient to establish causation." *Schneider*, 717 F.3d at 780. "There must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue." *Cordero v. Froats*, 2016 U.S. Dist. LEXIS 141000, *28-29, *citing City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

Plaintiff failed to plausibly allege a failure to train claim. Even considering Plaintiff's generic allegation that the City was responsible for Officer Gates' training and failed to train and supervise him (Am. Comp., 208, 213), such conclusory allegations are insufficient to survive Defendants' Motion to Dismiss. See *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim"); *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (stating that district court is not required to accept "footless conclusions of law" in ruling on motion to dismiss.) Without sufficient

facts to sufficiently allege the causal connection between actions of Officer Gates and the City's allegedly deficient training, Plaintiff's failure to train claim must be dismissed with prejudice.

## IV.    CONCLUSION

The Amended Complaint fails to state a claim against Sgt. Hill, failed to allege Officer Gates' liability under C.R.S §13-21-131 and fails to state a Monell claim against the City. This Court should grant Defendants' Partial Motion to Dismiss.

Dated this 31st day of May, 2022.

KISSINGER & FELLMAN, P.C.
*/s/ Jonathan M. Abramson*
Jonathan Abramson, Esq.
Yulia Nikolaevskaya, Esq.
3773 Cherry Creek North Drive, Suite 900
Denver, CO 80209
Telephone: 303-320-6100
Facsimile: 303-327-8601
Email: jonathan@kandf.com
           julie@kandf.com
*Attorneys for Defendants the City of Loveland,*
*Officer William Gates and Sergeant Antolina*
*Hill*

### CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Sarah Schielke, Esq. [sara@lifeandlibertylaw.com]
*ATTORNEY FOR PLAINTIFF*

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the non-participant's name:

*s/ Elizabeth Jackson*
Elizabeth Jackson, Paralegal
Kissinger & Fellman, P.C.